## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| MARK SNYDER, | : | Case No. 1:20-cv-392 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| U.S. BANK NATIONAL | : | |
| ASSOCIATION, | : | |
| | : | |
| Defendant.[1] | : | |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (Doc. 16) IN PART AND REMANDING
## THE CASE TO HAMILTON COUNTY, OHIO COURT OF COMMON PLEAS

This civil action is before the Court on Defendant's motion for summary judgment

(Doc. 16) and the parties' responsive memoranda (Docs. 23 and 24).

### I.    BACKGROUND[2]

### A.  Undisputed facts

Plaintiff Mark Snyder worked for Defendant U.S. Bank National Association

("U.S. Bank") from March 2002 until sometime in 2018 or early January 2019.

(Deposition of Mark Snyder, "Snyder Dep," Doc. 13 at 43).  Defendant U.S. Bank is a

banking association formed in accordance with the National Bank Act.  (Declaration of

---

[1] Defendant has been repeatedly mis-captioned as "U.S. Bancorp" for unclear reasons.

[2] Pursuant to the Standing Order of the Court, Defendant filed a Statement of Proposed
Undisputed Facts.  (Doc. 16). In determining the undisputed facts, the Court has drawn on that
statement and compared it to Plaintiff's motion in opposition and to the record.

Linda Bidon Declaration, "Bidon Decl.," Doc. 16-2, at ¶3). In 2016, Snyder was promoted to a Finance Director 2 position. (Snyder Dep. at 47, 50-51). In that role, he primarily managed a joint venture between U.S. Bank and The Kroger Company ("Kroger"), a large grocer, related to Kroger-branded credit cards. (*Id.*).

In 2017, Snyder was arrested and charged with aggravated menacing. (*Id.* at 28). The incident involved Snyder pointing, but not firing, a gun. (*Id.*). He later pleaded guilty to a charge of attempted confinement. (*Id.* at 28; *see also* Doc. 13-1 at PageID## 276-277). Because of the arrest, Snyder may have missed some work. (Snyder Dep. at 31). Snyder did not tell U.S. Bank about the arrest or the plea. (*Id.*). Because of the terms of his probation, Snyder missed a board meeting in Toronto, perhaps telling his employer he had a "personal situation." (*Id.* at 31-32). Johnnie Carroll, Snyder's supervisor, raised the issue of the missed meeting with Snyder. (*Id.* at 32). Around that time, Snyder was again arrested—this time for operating a vehicle under the influence, a charge to which he would plead guilty. (*Id.* at 35-36). Snyder did not report this arrest to U.S. Bank. (*Id.* at 37).

Seemingly on October 13, 2017, Snyder requested leave pursuant to the Family Medical Leave Act. (*See* Snyder Dep., Exhibit 21, Doc. 13-2 at PageID# 348). He requested it retroactively to October 11, 2017. (*Id.*). The paperwork memorializing that the leave request was approved lists only a "health condition" as the reason for the leave. (*Id.*). On October 23, 2017, Snyder had a stroke. (Snyder Dep. at 58-60). Snyder cannot say what condition, other than the impairments caused by the stroke, would have entitled

2

him to FMLA leave. (*Id.* at 67-68). Snyder also cannot say why his leave request, perhaps submitted with the help of his medical providers, asks for leave retroactive to October 11, 2017, almost two weeks *before* the stroke.[3] (*Id.* at 68).

In January 2018, Snyder returned from his FMLA leave. (*Id.* at 71). On his first day back, Snyder received a "very positive" performance evaluation for his work in 2017. (*Id.* at 89-90). Snyder also received a bonus and a raise. (*Id.*). Snyder informed Carroll that he was still undergoing physical and speech therapy. (Carroll Dep. at 65). Snyder, who had usually worked at U.S. Bank's downtown Cincinnati office, requested to work from an office closer to Snyder's home. (*Id.* at 72-73). Carroll granted the request, at least for a period of two weeks. (*Id.*).

When Snyder's return to the downtown office was imminent, Brian Henson, one of Snyder's reports, told Carroll that he (Henson) had safety concerns about Snyder. (Carroll Dep. at 53-54). Henson told Carroll, who was previously unaware, about Snyder's gun-related criminal case. (Declaration of Johnnie Carroll, "Carroll Decl.," Doc. 16-3, at ¶6). Carroll notified Stacey McCarty in HR. (Carroll Dep. at 55). McCarty said Snyder could return to work at the downtown office, although she noted, to Carroll, that Snyder had been uncooperative during her investigation. (Carroll Dep. 124-126).

More complaints about Snyder followed. (Snyder Dep. at 121). A U.S. Bank

---

[3] The Court is not insinuating anything nefarious of Snyder. It would be strange indeed if Snyder predicted he would have a stroke and preemptively asked for leave based on it. It is simply an irreconcilable timeline, perhaps the product of a paperwork error.

branch manager complained to Carroll about an interaction with Snyder.[4] (*Id.*). A Kroger employee complained that Snyder had approached her in a rude fashion and criticized the management of her unit at Kroger. (Snyder Dep., Ex. 28, Docs. 13-2). Carroll raised some of these complaints with Snyder. (Snyder Dep., Exs. 16, 26, 27, and 28, Docs. 13-1 and 13-2). Carroll also told Snyder about his own observations of Snyder's combative tone with colleagues. (Snyder Dep. at 98).

On May 3, 2018, Carroll gave Snyder a written warning letter. (Snyder Dep., Ex. 20, Doc. 13-2, PageID## 369-372). The warning letter noted several shortcomings of Snyder's: failure to have alternative work schedules approved; rudeness and disrespect toward Carroll; lying about the cause of absences; missed meetings; missed deadlines; and the above-referenced run-ins with the U.S. Bank branch manager and the Kroger employee. (*Id.*).[5] The letter goes on to state that "failure to meet the expectations outlined may result in further disciplinary action, up to and including termination of your employment." (Snyder Dep., Ex. 30, Doc. 13-2, PageID# 369-373).

Later in May 2018, Snyder's assistant, Marcia Kleinhenz, started to record Snyder's comings and goings while Carroll was away. (Deposition of Marcia Kleinhenz,

---

[4] Snyder here says he was in the role of "customer" rather than employee and implies that it is unfair to say this episode reflects on his work. (Snyder Dep. at 122:3). It is a relevant fact, regardless of whether it is properly related to his employment, because Carroll was clearly unpleased by receiving a complaint about Snyder from a U.S. Bank branch manager. (*Id.* at 121).

[5] The Court ought to be clear here. It is not accepting every event listed in the letter as the definitive account of what happened (although Snyder denies very few of those events). It is the fact of the letter, and what it says, neither of which are disputed, that this Court regards as a matter of record.

"Kleinhenz Dep.," Doc. 14, at 43, 45). Kleinhenz was not instructed to do so. (*Id.* at 45). Kleinhenz gave Carroll her notes regarding Snyder's absences from the office. (Carroll Dep. 116).

In an email sent on June 4, 2018, Carroll asked Snyder to comment on Kleinhenz's notes related to Snyder's apparent absences from work. (Snyder Dep., Ex. 32, Doc. 13-2, PageID# 374). Snyder went to address Kleinhenz directly. (Kleinhenz Dep. at 75). The tenor of this Kleinhenz-Snyder interaction is disputed but, indisputably, the interaction ended with Kleinhenz asking Snyder to walk away. (*Id.* at 76). Afterward, Kleinhenz sent an email to Carroll regarding the interaction. (Kleinhenz Dep., Ex. 2, Doc. 14-1, at PageID# 473).

The same evening, June 4, Carroll wrote to McCarty from HR, stating in relevant part, "I no longer think Mark's situation is redeemable and feel I need to act." (Carroll Dep., Ex. 17, Doc. 15-1, PageID# 576). Carroll asked for "next steps." (*Id.*).

Meanwhile, the same evening, Snyder suffered a nervous breakdown at a casino. (Snyder Dep. at 151). Snyder ended up at the hospital. (*Id.*). The next day, June 5, 2018, either Snyder or someone on behalf of Snyder requested medical leave. (*Id.* at 159-160). That leave was granted. (*Id.* at 60).

On June 22, 2018, McCarty from U.S. Bank's HR department called Snyder and told him he would be terminated, but that he could keep receiving the medical leave for which he was eligible. (Carroll Decl. at ¶12). Carroll reiterated those points by letter dated June 27, 2018—Snyder would be fired when his leave period was up. (Snyder

Dep., Ex. 39, Doc. 13-2, at PageID# 403).

Snyder has testified that he could do his job up until his nervous breakdown. (*Id.* at 164). Since being terminated, Snyder has not found new work. (*Id.* at 11, 210). His doctor has not released him to do so. (*Id.*).

In February 2019, Snyder filed for chapter 13 bankruptcy. (Snyder Dep., Ex. 3, Doc. 13-1, at PageID# 155). It seems that the petition itself declares Snyder "may have an ADA" claim against an employer, but he does not mention any FMLA or Ohio-state law claims against U.S. Bank in his scheduled of assets, which was amended many times. (Snyder Dep. at 19). In June 2019, the Bankruptcy Court confirmed Snyder's plan. (Snyder Dep., Ex. 7, Doc. 13-1, at PageID# 266).

## B. Plaintiff's Proposed Disputed Facts

The Court has reviewed Plaintiff Snyder's proposed disputed facts (Doc. 23-2) and identified the following as the relevant factual disputes:

1. *Whether U.S. Bank accommodated Snyder after his stroke and whether he was disabled.* After his stroke, Snyder received the accommodations mentioned by U.S. Bank—working from a new office, and so forth—but, importantly, Snyder says those accommodations only lasted two weeks. (Snyder Dep. 73-74). Later, Snyder requested to work from home and was denied. (*Id.* at 84). Additionally, Snyder states that a piece of metal that went into his eye during his stroke caused his eye to hurt when he looked at his computer monitor. (*Id.* at 135-37, 139). He requested a larger computer monitor. (*Id.*). The request

6

was denied. (*Id.*). Snyder also states he needed breaks throughout the day to deal with eye pain and was reprimanded for taking those breaks. (*Id.* at 135-136).

2. *When Snyder was terminated*. Snyder argues he was not effectively terminated until June 22, 2018—and possibly not until in January 2019. (Snyder Dep., Ex. 39, at PageID# 403). The issue is potentially relevant because of the proximity between Snyder's leave and his termination. (Doc. 23 at 14).

3. *Who terminated Snyder.* Snyder says that U.S. Bank regards him as an officer. (Doc. 23 at 6). If that is true, although ultimately Snyder contests the point, Carroll could not have made the decision to fire Snyder on June 4 because Carroll does not have the power to fire Snyder. (Snyder Dep., Ex. 39, at PageID# 403). If Snyder is an officer, the U.S. Bank's Board must fire him. (Doc. 23 at 6 n.2).

4. *Why Snyder was terminated.* Snyder argues that it is at least an open-question that there was a causal connection between Snyder's taking of leave and his termination. (Doc. 23 at 15).

5. *Whether Snyder is an officer of the bank.* Snyder argues he is not. (Doc. 23 at 12).

6. *Whether Snyder can mitigate damages by seeking new work.* Snyder argues he cannot seek new employment because his doctor has not allowed him to do so. (Snyder Dep., Ex 49, Doc. 13-2 at PageID# 435).

## C. Procedural Posture

Snyder filed this case in the Hamilton County Court of Common Pleas. (Doc. 3). U.S. Bank removed it. (Doc. 1). The notice of removal states this Court has federal question jurisdiction over the FMLA claims and may exercise supplemental jurisdiction over the state-law claims. (Doc. 1 at ¶¶4, 5). The notice does not claim diversity jurisdiction as a basis for the Court's authority to hear this case. (*Id.*). There have been no other substantive motions in the case. The parties requested an extension to complete discovery, which was granted. (Doc. 10).

Snyder has put forth the following claims, all of which, for now, remain before the Court: Interference with FMLA Leave (Count One); Retaliation in violation of FMLA (Count Two); Failure to Provide a Reasonable Accommodation in Violation of Ohio R.C. §4112 (Count Three); Retaliation in Violation of Ohio R.C. §4112 (Count Four).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

U.S. Bank makes several arguments in support of its motion. (Doc. 16). U.S. Bank first looks to Snyder's bankruptcy petition. (*Id.* at PageID# 591). Because Snyder did not correctly identify his claims against U.S. Bank on his schedule of assets, U.S. Bank argues, Snyder is estopped from pursuing all claims here. (*Id.* at PageID# 593). As to Snyder's state law claims, U.S. Bank argues they are pre-empted by the National Banking Act. ("NBA"). (*Id.* at PageID# 593). As against all claims, state and federal, U.S. Bank argues Snyder's claims fail as a matter of law. (*Id.* at PageID# 594). Finally, U.S. Bank accuses Snyder's of failing to mitigate damages. (*Id.* at PageID# 595).

The state law claims are not based on diversity jurisdiction. That means if the Court dismisses the federal claims it must decide whether to remand the case. For this reason, the Court looks to those arguments that apply to the federal claims first.

### A. Judicial estoppel and Snyder's bankruptcy

U.S. Bank states Snyder did not disclose his claims against U.S. Bank in his bankruptcy proceeding. And, for that reason, according to U.S. Bank, judicial estoppel prevents him from asserting those claims here. (*Id.* at PageID# 591).

Judicial estoppel is an equitable doctrine, applied at the Court's discretion. *See*

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is based on the premise that:

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his interests have

changed, assume a contrary position, especially if it be to the prejudice of the party who

has acquiesced in the position formerly taken by him." *Id.* at 749 (2001) (citing *Davis v.*

*Wakelee*, 156 U.S. 680, 689 (1895)).

> The Sixth Circuit has articulated the purpose of judicial estoppel:
>
> [J]udicial estoppel is an equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.

*Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (internal quotations

and citations omitted).

Failure to disclose an asset in a previous bankruptcy proceeding can constitute a

"position" for the purposes of judicial estoppel. *Teledyne Indus., Inc. v. NLRB*, 911 F.2d

1214, 1218 (6th Cir.1990). However, inadvertence and a lack of bad faith are factors the

court may analyze in deciding whether to apply judicial estoppel to the claims. *See Lewis*

v. *Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005)

There is more than one multi-prong formulation of the judicial estoppel standard.

The Court finds the *New Hampshire v. Maine* formulation is most aligned with the stated

purpose of judicial estoppel. See 532 U.S. 742, 742 (2001) The Supreme Court in *New*

*Hampshire* states three considerations ought to guide the imposition of judicial estoppel:

> (1) whether a party's later position is "clearly inconsistent with its earlier position"
> (2) whether the party has succeeded in persuading a court to accept that party's earlier position, and
> (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped

*Id.* at 750.

The facts relevant to this argument are not in dispute. After being terminated, in February of 2019, Snyder filed for bankruptcy. Snyder lists an "ADA Claim against U.S. Bank/ Former employer" as an unliquidated claim. (Doc. 13-1 at PageID# 168). The Bankruptcy Court confirmed his plan. (*Id.* at PageID# 266).

U.S. Bank takes the position that Snyder therefore did not declare his "Ohio and FMLA" claims. (Doc. 16 at PageID# 592). Those claims, according to U.S. Bank, thus fall prey to judicial estoppel. The Court disagrees. (*Id.*)

First, it is worth questioning whether Snyder's "earlier position" is "clearly inconsistent" with his position here. Snyder stated he had an "ADA" claim against his employer. Is the disclosure of an ADA claim "clearly inconsistent" with the assertion of employment-related FMLA and Ohio-based disability claims that would likely involve the same factual grounds as an ADA claim? The Court thinks not. Snyder may have told his bankruptcy lawyer he had an ADA claim because that is what Snyder thought he would file.

In other words, it seems like "ADA claim" functions as the placeholder for the lawsuit against U.S. Bank. It is clear from his deposition that Snyder, both before and

after the filing of the present suit—which involves no ADA claims—uses "ADA" as shorthand for something like: 'the bundle of rights that entitles him to accommodations.' (*See, e.g.*, Snyder Dep. at 138: 7, 139: 23-24). Yes, Snyder probably should have refined his characterization of the lawsuit on amended bankruptcy schedules. But this alone does not justify the imposition of a blunt tool like judicial estoppel.

Assuming a failure to disclose, the Court finds Snyder probably made a mistake. Snyder did disclose the potential for a lawsuit. The lawsuit he ended up bringing had different claims. vIn the context of the case, this seems like inadvertence. Looking at it from the opposite perspective, the Court doubts that a cynical operator would disclose his "ADA" claims but strategically withhold his FMLA claims. This is especially likely because the Court has no evidence before it regarding the difference in value between a bankruptcy estate with unliquidated ADA claims and a similarly positioned one with "FMLA and Ohio-based disability claims." The Court concludes that this is a mistake, if it is even that, rather than a ploy.

Thus, the Court finds that Snyder's positions are not clearly inconsistent. And, assuming *arugendo* they are inconsistent, it is likely the result of inadvertence.

Because the bankruptcy court approved his plan, Snyder arguably "persuaded" the bankruptcy court of his earlier position. *New Hampshire*, 532 U.S. at 750 (2001). Thus, the Court moves onto the third consideration: an unfair advantage gained by Snyder or the imposition of an unfair detriment on the opposing party if Snyder is not estopped. *Id.*

There is no evidence Snyder gained an unfair advantage in this case. Nor is there

12

any evidence of an unfair detriment to U.S. Bank.  U.S. Bank is not a creditor of Snyder.

Having chosen a different formulation of the judicial estoppel considerations, U.S. Bank

makes no argument on this point.[6]  Nonetheless, the Court finds it highly relevant.  If

Snyder has failed to disclose an asset on his bankruptcy petition, U.S. Bank does not

suffer because of it.

Ultimately, judicial estoppel should be deployed with "caution" because it

truncates "truth-seeking." *Eubanks*, 385 F.3d at 897 (6th Cir. 2004).  It is also a doctrine

committed to this Court's discretion. *New Hampshire*, 532 U.S. at 750 (2001).  Here,

having observed no "cynical gamesmanship" or prejudice to U.S. Bank, the Court, in its

discretion, declines to estop Snyder from asserting his claims.  *Eubanks*, 385 at 897 (6th

Cir. 2004).

**B.  Snyder's FMLA claims fail as a matter of law**

U.S. Bank argues that Snyder's FMLA claims fail as a matter of law. (Doc. 16 at

PageID# 595). Snyder brings FMLA claims under both an "interference" and a

"retaliation" theory.

Under the FMLA, employees who suffer from "a serious health condition that

makes [them] unable to perform the function of [their] position" may take up to twelve

weeks of leave per year. 29 U.S.C. § 2612(a)(1)(D).  Employers may not "interfere with,

---

[6] According to U.S. Bank, the relevant inquiry, as expressed by the court in *Lewis v. Weyer-hauser*, is whether: "1) a party asserts a position that is contrary to the one the party has asserted under oath in a prior proceeding and (2) the court adopted the contrary position either as a preliminary matter or as part of a final disposition." 141 Fed. Appx. 420, 425 (6th Cir. 2006); (Doc. 16 at PageID# 592).

restrain, or deny the exercise of or the attempt to exercise, any right provided by [the FMLA]." 29 U.S.C. § 2615(a)(1). Additionally, employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). Finally, as is potentially relevant here, employees eligible for leave under the FMLA "shall be entitled, on return from such leave … to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. §2614.

In the Sixth Circuit, courts analyze both FMLA interference and FMLA retaliation claims under the *McDonnell-Douglas* burden-shifting framework. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762-63 (6th Cir. 2012); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). Under that framework, an FLSA claimant must demonstrate a prima facie case. *Id.* If the plaintiff does so, the burden shifts to the defendant to present a legitimate nondiscriminatory reason for the challenged conduct. *Id.* If the defendant carries this burden, the plaintiff's claims "survive summary judgment only if [he] can show that defendant's stated reasons are a pretext…." *Donald*, 667 F.3d 757, 761–62 (6th Cir. 2012).

### 1. *FMLA interference claim*

To make out an FMLA interference claim, Snyder must show: (1) he was an eligible employee, (2) U.S. Bank was an employer as defined under the FMLA, (3) Snyder was entitled to leave under the FMLA, (4) Snyder gave the employer notice of his intention to take leave, and (5) U.S. Bank denied the employee FMLA benefits to

which he was entitled. *See Becknell v. Univ. of Kentucky*, 383 F. Supp. 3d 743, 752–53 (E.D. Ky. 2019)

The only element in dispute is the last one. Snyder argues that U.S. Bank interfered with Snyder's FMLA leave because U.S. Bank arguably fired him during, rather than before, his second medical leave. (Doc. 23 at 15). Thus, U.S. Bank denied Snyder the reinstatement rights he alleges he is entitled to under 29 U.S.C. §2614(a)(1). *See Saulter v. Detriot Area Agency on Aging*, 562 F.App'x 346, 360 (6th Cir. 2014).

As Snyder puts it, "[a]t the very least, there is an issue of fact as to when Snyder was terminated. And reasonable minds could conclude that Snyder was terminated while on his second medical leave, and that termination interfered with Snyder's medical leave." (Doc. 23 at 14-15).

The Court agrees that there may be an issue of fact as to when Snyder's termination was effective. Given the circumstances, that fact does not alter the outcome of the case. *See Celotex*, 477 U.S. at 323. Snyder is focused on the timing of his termination because Snyder's argument implicitly assumes that a termination that took place during his leave constitutes *per se* FMLA "interference."

That is not the case. FMLA restoration rights "shall [not] be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Accordingly, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA

15

leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Many Sixth Circuit cases stand behind the proposition that "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *See Allen v. Butler Cty. Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009); *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Arban*, 345 F.3d at 401 (6th Cir. 2003).

For purposes of argument, the Court will assume that Snyder was fired during his FMLA leave rather than before his leave or after it.[7] The Court will also assume that Snyder has made his prima facie case on the elements of his interference claim. The first four elements of the claim are essentially admitted. The fifth element turns on the question of whether Snyder was "entitled to reinstatement." And since reinstatement is a right granted to an FMLA-eligible employee unless he is not entitled to it for another reason, the Court finds there is at least prima facie evidence of the fifth element as well.

The burden thus shifts to U.S. Bank to show there was a legitimate, non-FMLA related reason to terminate Snyder. *Donald*, 667 F.3d at 762-63. U.S. Bank's proffered evidence sufficiently carries that burden. Snyder missed work and was untruthful about the reason. Carroll received complaints about Snyder's combative tone from fellow

---

[7] According to U.S. Bank, "Snyder's termination was processed and finalized on December 28, 2018, after he exhausted all available FMLA leave and short-term disability benefits." (Carroll. Decl. at ¶13).

16

employees, business partners, and others.  Snyder disputes almost none of the events that gave rise to these complaints.  It is also undisputed that Snyder received a warning letter that identified these issues and raised the threat of his termination.

Then Snyder had the run-in with Kleinhenz.  Kleinhenz reports feeling intimidated although Snyder says he never raised his voice.  The precise details of this conflict do not matter.   What matters is that all evidence points to this being the tipping point for Carroll, Snyder's manager.  After hearing of the run-in with Kleinhenz, Carroll wrote an email to HR to say that Snyder's situation was no longer redeemable.  The same email inquiries of HR about "next steps," the context leaving little doubt about where those next steps would lead. Carrol sent this email before Snyder requested his second FMLA leave.  This constitutes very strong evidence Snyder's firing was not pretextual.

 With Snyder re-shouldering the burden, he comes up with no evidence of pretext. Snyder can only contend that Carroll did not decide to terminate Snyder when he sent the email.  Instead, Carroll "was seeking advice from human resources." (Doc. 23 at 14). Regardless of how it is characterized, the email is very competent evidence that Carroll, Snyder's manager, wanted to fire him before Snyder requested or went on FMLA leave for the second time.  And undisputed evidence suggests Carroll had more than one non-FMLA reason for wanting to do so.

Snyder also states the U.S. Bank board did not ratify Snyder's termination until January 2019. (Doc. 23 at 16).  For the sake of argument, the Court assumes that that is true and, therefore, Snyder was officially let go while on leave.  Against the backdrop of

Carroll's email, this fact alone does not provide any evidence that Snyder was terminated because he requested or took leave or that U.S. Bank was hiding behind pretext.  The Court explores this in more depth in addressing Snyder's retaliation claim.

For now, suffice to say that Snyder cannot point to evidence that creates a genuine dispute of material fact that he was fired because he exercised his FMLA rights.  Snyder cannot simply rely on a formalist rendering of the timeline.  He must have evidence that he was not fired for the legitimate reasons U.S. Bank had to fire him.  He has none.

### 2. *Snyder's retaliation claim*

Here, causation is seemingly the only disputed element of Snyder's claim, so the Court will narrow its analysis to that point. Snyder relies on cases suggesting "temporal proximity" may be evidence of causation in FMLA cases. (*See* Doc. 23 at 15 (citing *Byrson v. Regis*, 498 F.3d 561, 571 (6th Circuit 2007)).  Those cases are careful to use flexible language like "may" and "can be" because, inevitably, context matters. *See e.g.*, *Santoli v. Vill. of Walton Hills*, No. 1:12CV1022, 2015 WL 1011384, at *6 (N.D. Ohio Mar. 3, 2015).  To that end, the Court puts little weight on the fact that, formally speaking, Snyder requested leave on June 5 and was terminated on June 28 (or January of the next year).  On June 4, Carroll put Snyder's firing in motion.  Once again, this is strong evidence negating a causal connection.

Snyder relies on *Seeger v. Cincinnati Bell Telephone* for the proposition that the threshold of proof to make out a prima facie case for an FMLA retaliation claim is low. *See* 681 F.3d 274 (6th Cir. 2001).  Given the specific facts surrounding the "temporal

proximity" in this case, it questionable as to whether Snyder has made a prima facie case, no matter how low the burden. But assuming Snyder has done so, U.S. Bank sufficiently rebuts that prima facie case with competent documentation of Snyder's behavior and Carroll's June 4 email.

Under the commands of *Seeger* and *Donald*, that would leave Snyder once again with the ultimate burden to show pretext. And "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763 (6th Cir. 2012). As already noted, Snyder has nothing beyond his already questionable temporal proximity.

As required, the Court has applied the *McDonnell-Douglas* burden shifting framework. Under that framework, Snyder fails to show any evidence of a pretextual termination. For that reason, Snyder fails to interject a genuine issue of material fact. Fed. R. Civ. P. 56(c); *See Celotex* 477 U.S. at 322. Accordingly, U.S. Bank is entitled to summary judgment on the Snyder's FMLA claims. The Court will dismiss Counts One and Two of Snyder's Complaint. (Doc. 3).

That leaves only state law claims before the Court. The state law claims are before the Court pursuant to its supplemental jurisdiction. Accordingly, the Court must decide whether to exercise that jurisdiction or remand the case. *See Carlsbad Tech., Inc. v. HIF Bio*, Inc., 556 U.S. 635, 637 (2009).

## C. Remand is appropriate

This Court's initial jurisdiction over the state law claims, as set forth in the notice

of removal, "is conferred by 28 U.S.C. § 1367(a)." (Doc. 1 at ¶5). That statute allows the Court to exercise supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. The notice of removal does not assert diversity jurisdiction as a basis for this Court to hear the state law claims. (Doc. 1).

Under 28 U.S.C. §1367(c), district courts may decline to exercise supplemental jurisdiction, if "the district court has dismissed all claims over which it has original jurisdiction." *See Carlsbad Tech., Inc. v. HIF Bio*, Inc., 556 U.S. 635, 637 (2009). By long-established principle, the district court ought to evaluate "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). However, the Sixth Circuit is clear that when "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

On the issue of judicial economy and convenience, the Court acknowledges the parties have invested resources in this forum. They have removed the case here, conducted discovery, and briefed the present motion. That said, the depositions and other evidence ought to be equally competent in a remanded state proceeding.

Any inconvenience notwithstanding, it is also the Sixth Circuit's clear preference to remand residual state law claims when the federal claims are dismissed "before trial."

*Musson*, 89 F.3d at 1254 (6th Cir. 1996). This preference applies to cases at the summary judgment stage. *See, e.g.*, *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

The Court discerns no fairness implications. The parties will not be prejudiced by a remand. Moreover, the dispute will go back to state court significantly narrowed. This may help it along toward resolution.

Finally, on the issue of comity, there are good reasons to remand the remaining claims. Snyder explicitly filed in state court *and* explicitly filed claims arising under Ohio statutes rather than federal statutes with similar subject matter. Accordingly, a remand accords with allowing Plaintiff to be the "master of his complaint." *See Solectron USA ex rel. Fid. & Deposit Co. of Maryland v. Fedex Ground Package Sys., Inc.*, 520 F. Supp. 2d 904, 907 (W.D. Tenn. 2007). The Court acknowledges that U.S. Bank attacks Snyder's state law claims, in part, with a pre-emption argument based on federal law. (Doc. 16 at PageID# 594). But the argument is based on a single, short provision of the National Banking Act, and U.S. Bank also argues the state law claims fail as a matter of Ohio law. (*Id.* at PageID## 597-599). To the extent that Snyder's alleged failure to mitigate damages is still relevant to this dispute, it is also a matter of state law. In other words, the preemption argument notwithstanding, state law is the center of the remaining claims.

For the above reasons, the Court will remand the state-law claims in Counts Three and Four of the complaint.

## IV. CONCLUSION

Based upon the foregoing, Defendant U.S. Bank's motion for summary judgment (Doc. 16) is **GRANTED with respect to Count One and Count Two of the complaint**. Those claims are **DISMISSED**.  For reasons stated, this case is hereby **REMANDED** to the Hamilton County, Ohio Court of Common Pleas from which it was removed.  The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date:  __3/28/2022_____          ___*s/Timothy S. Black*_____
                                      Timothy S. Black
                                      United States District Judge